### Application of WORLD'S FINEST CHOCOLATE, INC.
### Patent Appeal No. 8846.

United States Court of Customs and Patent Appeals.

March 15, 1973.

Charles A. Laff, Lynn R. Kipnis, Chicago, Ill. (Pendleton, Neuman, Williams & Anderson, Chicago, Ill.), attys. of record, for appellant.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Associate Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

2. See Tariff Commission, Tariff Classification Study, Explanatory Notes to Schedule 6, Part 5 at p. 303 (1960).

LANE, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board sustaining the examiner's refusal to register a design trademark for "candy." [1] The design depicts a wrapped bar of candy and is shown below:

For purposes of our opinion, we presume familiarity with the board's opinion at 166 USPQ 63 (1970) and, therefore, the underlying facts here involved. We reverse.

The principal issue before us is whether or not the board was correct in concluding that the package design "cannot qualify as a mark entitled to registration" notwithstanding de facto distinctiveness.

As we see it, the primary position of the Patent Office in the present case is that there is a vital interest in preserving the public right to copy the package sought by World's Finest to be registered; an interest which overrides the distinctiveness that package may have in fact acquired. The Patent Office feels that the right to package a candy bar in inner and outer wraps in the manner utilized by appellant is one which must not be foreclosed indefinitely by proprietary trademark rights.

In In re Deister Concentrator Co., 48 CCPA 952, 289 F.2d 496, (1961), this court held a design in the form of a substantially rhomboidal outline applied to "ore concentrating and coal cleaning tables" not to be a recognizable trademark. Finding that the outline, which was in the shape of the deck of the table, was in its essence dictated by utilitarian or engineering considerations, the court reasoned that "absent patent protection, the public has the right to copy the shape and enjoy its advantages." 48 CCPA at 968, 289 F.2d at 505. The court refused to accord legal significance to the evidence of de facto distinctiveness or "secondary meaning," explaining that the basis for such a refusal is not a conclusion that the alleged mark cannot or does not indicate source, but rather a recognition of a more compelling interest in preventing its monopolization—"of preserving the public right to copy." 48 CCPA at 966, 289 F.2d at 504.

I. Trademark application Serial No. 256,703 filed October 19, 1966.

■ We do not agree that the package design here is so functionally oriented within the sense of In re Deister that, assuming de facto distinctiveness, a private right to use it exclusively should be denied in favor of a more pressing public interest in copying. We think competitors can readily meet the demand for packaged candy bars by use of other packaging styles, and we find no utilitarian advantages flowing from this package design as opposed to others as was found in the rhomboidally-shaped deck involved in *Deister*. See In re Mogen David Wine Corp., 51 CCPA 1260, 1269–1270, 328 F.2d 925, 932–933 (1964) (Rich, J. concurring). In other words, although the package design sought to be registered may have utilitarian function, we do not regard it as primarily functional. Cf. In re Shenango Ceramics, Inc., 53 CCPA 1268, 362 F.2d 287 (1966); Best Lock Corp. v. Schlage Lock Co., 56 CCPA 1472, 413 F.2d 1195 (1969). It therefore is a trademark capable of being registered.

■ We have thus far assumed that de facto distinctiveness has been proved. Appellant submitted evidence for that purpose, and neither the board nor solicitor appear to have contested the sufficiency of that evidence per se. However, the examiner attached to his Answer "two candy bars which * * * [in his] opinion * * * are indistinguishable" in shape from appellant's packaged candy bars. The examiner felt that those bars demonstrate "that there is nothing distinctive in applicant's packaging * * *."

Both the board and solicitor have relied to some extent upon the material added by the examiner. The board utilized the attachments to arrive at the conviction that other manufacturers were availing themselves of the right to make and package candy bars previously protected by a design patent owned by appellant. The solicitor adopts the examiner's reasoning that the attachments prove lack of distinction and couples that viewpoint with the contention that "appellant does not deny that other manufacturers are producing chocolate bars shaped and packaged in a form indistinguishable from that of appellant's candy."

With respect to the candy bars made of record by the examiner in the form of photocopies, appellant argued the following in a reply brief to the board:

We are unable to determine the actual shape of the packages in question from the Xerox copies. Nor were we able to obtain duplicates of these chocolate bars on the open market in the available time. But the shape of these bars is irrelevant to the issues here, because no inference as to the common practices in the industry can be drawn from the mere existence of two wrappers of unknown origin and history.

There is no evidence as to the length of time or the extent of use of these wrappers. For all this record shows, these products could have first come into existence within the last few months and may no longer be in use. These wrappers could have been copied from applicant's package in an effort to capitalize on the good will which applicant's mark has acquired over its many years of use. Imitation of applicant's package lends weight to applicant's position that its package is inherently distinctive or, at least, that it is recognized by the public as an indication of source.

The printed record before us includes the photocopies of the two candy bar packages, but we are in agreement with appellant that those copies neither make it clear that the candy bars are "indistinguishable" from appellant's nor provide a firm basis for drawing any inference with respect to common packaging practices in the trade. We do not find them to be of probative value as to any issue involved herein.

■ The board's reference to appellant's now-expired design patent fails to lend support to a finding of either no distinctiveness in fact or nonregistrability even if de facto distinctiveness is

present. The mere existence of design patent rights is independent of, and immaterial to, the ownership of trademark rights. In re Mogen David Wine Corp., 51 CCPA 1260, 328 F.2d 925 (1964); In re Mogen David Wine Corp., 54 CCPA 1086, 372 F.2d 539 (1967).

■ Finally, the solicitor's contention that appellant does not deny that other manufacturers are producing candy bars· of shape and package design identical to appellant's is not supported by any concession or suggestion of one on the part of appellant. The solicitor does make reference to a specific page in the appellant's main brief, but we find nothing thereon which could reasonably support the solicitor on this point. We do not think appellant has to make such a denial under penalty of prejudice to its position. The proceedings before the Patent Office were based on appellant's belief that the package design sought to be registered is distinctive of its goods. Evidence has been submitted in support of that belief. Appellant need not undertake the burden of ascertaining whether or not other manufacturers are producing "indistinguishable" packaged candy bars, at least in the absence of some probative evidence. to the effect that they are.

■ We find no challenge to the evidence offered by appellant for the purpose of proving de facto distinctiveness and no probative evidence or concession to the contrary. Accordingly, we hold that on the record before us the package design does in fact identify appellant's goods and distinguish them from those of others.

During oral argument, the solicitor invited attention to our decision in In re General Tire & Rubber Co., 56 CCPA 867, 404 F.2d 1396 (1969). In that case, the design trademark consisted of three narrow white concentric rings on the dark sidewall surface of a tire. We concluded that through long familiarity with whitewalls as tire ornamentation, the public would consider a three-ring whitewall as just a refinement of a general ornamental concept rather than a trademark. No evidence of distinctiveness had been submitted. The *General Tire* case is inapposite here in view of our finding that appellant's package design identifies and distinguishes the goods to which it is applied. See In re Data Packaging Corp., 59 CCPA 453 F.2d 1300 (1972).

For the reasons stated above, we conclude that appellant is here entitled to registration. The decision of the board is therefore reversed.

Reversed.