[Civ. No. 63106. Second Dist., Div. Three. Dec. 20, 1982.]

SAMMONS & SONS, Plaintiff and Appellant, v. LADD-FAB, INC., Defendant and Respondent.

**COUNSEL**

Cayer, Johnson & Westrup and Gary L. Marsh for Plaintiff and Appellant.

Leslie & Rubin, Barry S. Rubin, Poms, Smith, Lande & Rose, Gary E. Lande and William J. Robinson for Defendant and Respondent.

**OPINION**

**POTTER, Acting P. J.**—Plaintiff Sammons & Sons appeals from a judgment dismissing its action against defendant Ladd-Fab, Inc., after defendant's demurrer to plaintiff's "Complaint for Money Damages, Accounting of Profits, and Permanent Injunctive Relief on Account of Unfair Business Competi-

tion and Practices; and for Declaratory Relief" was sustained without leave to amend.

The complaint comprises four causes of action. However, only the first cause of action alleges any facts purportedly constituting a violation of plaintiff's rights; the remaining causes of action simply incorporate these allegations and seek different relief based thereon. The gravamen of plaintiff's unfair competition claim, as stated in the first cause of action, is as follows: Commencing in 1957, plaintiff engaged in manufacturing, fabricating, constructing, designing, merchandising and marketing of metal and other storage components utilized in connection with warehousing and other storage of goods. These components were original and unique in conception and design and had both functional and nonfunctional features which distinguished them from other similar products. Plaintiff expended large sums of money to design and develop these components and to advertise, market and merchandise them so as to create a consumer demand throughout California and elsewhere in the United States. These components became widely known and accepted and plaintiff acquired a preeminent position in the storage equipment industry. In 1978, defendant became a distributor of plaintiff's components and thereby acquired a supply of them, as well as technical and other literature compiled by plaintiff relating thereto. In 1980, defendant commenced manufacturing, fabricating, constructing, designing, merchandising, and marketing of storage components "substantially all of which components were and are exact reproductions and duplications of the metal and other storage components heretofore manufactured, fabricated, constructed, designed, merchandised, and marketed by Plaintiff" and published and distributed "a certain catalog reflecting the entire product line of Ladd-Fab, all of which product line was and is an exact duplicate, reproduction, and replica of Plaintiff's product line" "which catalog was and is substantially an exact reproduction and duplication of the catalog reflecting the product line of Plaintiff. . . ." Copies of the respective catalogs are attached.

The complaint then characterizes defendant's actions in duplicating plaintiff's entire product line and its catalog as " 'unfair competition' within the meaning and purview of Section 17200 of the California Business and Professions Code." Plaintiff's demand that defendant cease the sale of its reproductions and the publishing and distributing of its catalog were rejected.

Defendant's demurrer was based solely on the ground that the complaint fails to state facts sufficient to constitute a cause of action.

Before making its order, the trial court indicated its view that no cause of action was stated and offered plaintiff the opportunity to amend, but suggested that if plaintiff had taken its "best shot," it might prefer to leave the complaint as it was and test the question by an appeal. Plaintiff chose this alternative.

The court's ruling was premised directly and entirely upon the propositions that (1) federal law has completely preempted state law relating to the copying of unpatented and uncopyrighted matter coming within the ambit of the patent and copyright laws; (2) under federal law, the copying of plaintiff's unpatented products and the reproduction of plaintiff's uncopyrighted catalog is permissible; and thus, (3) such copying cannot as such be unfair competition under California law.

## Contentions

Plaintiff concedes that "[t]he basic premise of *Sears* and *Compco*,[1] both decided on the same day, is that 'when an article is unprotected by a patent or copyright, state law may not forbid others *to copy that article*' because the patent law allows 'free access to copy whatever the federal patent and copyright laws leave in the public domain.'" Plaintiff claims, however, that despite this limitation, a cause of action survives under state law for "misappropriation" of plaintiff's "many years of development and research" and that such a cause of action is stated in the complaint. Alternatively, plaintiff contends that its complaint shows plaintiff's entitlement "to equitable relief from the trial court with respect to making [defendant] identify distinctly the source and origin of its products." Defendant controverts both of plaintiff's said contentions.

## Discussion

### Summary

No cause of action for "misappropriation" is stated. By legitimizing the copying of matter in the public domain, *Sears* and *Compco* proscribe misappropriation claims based *solely* upon such copying. Plaintiff's complaint alleges no facts other than lawful copying of its products and of the work of authorship in its catalog, both of which are in the public domain.

The complaint likewise omits any facts suggesting that defendant has failed to identify the source and origin of its products.

### No Misappropriation Cause of Action Alleged

The complaint, which plaintiff agreed was its "best shot," alleges the utilization by defendant of the physical properties of plaintiff's products and its catalog descriptions thereof developed as the result of plaintiff's large expenditure, and thereby benefiting from plaintiff's efforts. Fairly characterized, such conduct was an appropriation of plaintiff's effort. The flaw in plaintiff's

---

[1]*Sears, Roebuck & Co.* v. *Stiffel Co.* (1964) 376 U.S. 225 [11 L.Ed.2d 661, 84 S.Ct. 784], and *Compco Corp.* v. *Day-Brite Lighting* (1964) 376 U.S. 234 [11 L.Ed.2d 669, 84 S.Ct. 779].

complaint, however, is that it alleges no facts which show that such appropriation was wrongful, that is, that it was a "misappropriation." Plaintiff does not deny that both its products and the work of authorship in its catalog are in the public domain, and acknowledges that *Sears* and *Compco* both decided that the federal patent and copyright laws require "free access to copy" that which is in the public domain. The obvious conclusion is that an appropriation accomplished solely by a copying which is lawful under the federal patent and copyright laws, cannot be a misappropriation.

To avoid this conclusion, plaintiff (1) frontally attacks the *Sears* and *Compco* cases and (2) asserts continued validity of a misappropriation cause of action where the free copying is accompanied by " 'misappropriation' . . . outside the scope of copying."

Little purpose would be served by our accepting plaintiff's invitation to relegate *Sears* and *Compco* "*to the limbo of judicial aberrations.*" ■ As our Supreme Court said in *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]: "Under the doctrine of *stare decisis,* all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." What the United States Supreme Court holds as to the preemptive effect of the federal patent and copyright laws cannot be overruled by this court. ■ We are, therefore, bound by the rule as stated by the United States Supreme Court in *Sears* (376 U.S. at pp. 232-233 [11 L.Ed.2d at pp. 667-668]) that "because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying." This declaration was based on the court's conclusion that a contrary result "would be too great an encroachment on the federal patent system to be tolerated" (*id.,* at p. 232 [11 L.Ed.2d at p. 667]). In *Compco* (376 U.S. at p. 237 [11 L.Ed.2d at p. 672]), the court characterized its holding in *Sears* as follows: "[W]hen an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article."

In *Goldstein* v. *California* (1973) 412 U.S. 546, 562 [37 L.Ed.2d 163, 177, 93 S.Ct. 2303], the court made it clear that "whether any specific category of 'Writings' is to be brought within the purview of the federal statutory scheme is left to the discretion of the Congress." The 1976 copyright law makes it abundantly clear that catalogs are works of authorship within the purview of the federal copyright law. 17 United States Code, section 102 extends copyright protection to "(1) literary works." The historical note to section 102 includes "Notes of Committee on the Judiciary" which state: "The term 'literary works' does not connote any criterion of literary merit or qualitative value: it includes catalogs, directories, and similar factual, reference, or instructional works and compilations of data." (17 U.S.C.A. at p. 15.)

It is equally clear that components, such as those manufactured and sold by plaintiff and by defendant, are within the purview of the federal patent law. 35 United States Code, section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." As the Third Circuit stated in *Riter-Conley Mfg. Co.* v. *Aiken* (1913) 203 F. 699, 703: "Thus, whether required in that case or not, the statement of Judge Acheson in Johnson v. Johnston (C.C.) 60 Fed. 618, that 'the term "manufacture," as used in the patent law, has a very comprehensive sense, embracing whatever is made by the art or industry of man, not being a machine, a composition of matter, or a design,' is in our judgment sound."

The applicability of the *Sears* and *Compco* doctrine having been demonstrated, we turn to the question whether that doctrine is consistent with the continued recognition of misappropriation by copying of public domain matter as the basis for unfair competition claims. We conclude that, though such copying may be an element in an otherwise unlawful competitive scheme, unfair competition claims may not be based *solely* upon such copying. We reject plaintiff's reliance upon cases decided before *Sears* and *Compco*, which overruled them.

Plaintiff places great reliance on the decision of the United States Supreme Court in *Internat'l News Serv.* v. *Asso. Press* (1918) 248 U.S. 215 [63 L.Ed. 211, 39 S.Ct. 68, 2 A.L.R. 293] (hereinafter *INS*). *INS* expanded existing concepts of unfair competition to include protection against appropriation of competitive advantage "acquired by complainant as the result of organization and the expenditure of labor, skill, and money" by a defendant who thereby "is endeavoring to reap where it has not sown." (*Id.*, at p. 239 [63 L.Ed. at p. 221].) In *INS*, the defendant appropriated news items from early editions of newspapers serviced by the plaintiff and distributed them to its subscriber competitive newspapers making later publication. The principles announced in *INS* would appear to support plaintiff's misappropriation theory unless they are overruled by *Sears* and *Compco*.

Nothing in *Sears* and *Compco* expressly overrules *INS* but the conclusion is inescapable that, in situations covered by *Sears* and *Compco*, *INS* principles must yield to the holdings in *Sears* and *Compco*. That is the conclusion reached by the First Circuit in *Columbia Broadcasting System, Inc.* v. *DeCosta* (1967) 377 F.2d 315, which states that *INS*, which it characterizes as "the leading case affording a remedy for mere copying . . . is no longer authoritative" (*id.*, at p. 318) having "clearly been overruled by the Supreme Court's recent decisions in Sears, Roebuck & Co. v. Stiffel Co., 1964, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, and Compco Corp. v. Day-Brite Lighting, Inc., 1964, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669" (*id.*, at pp. 318-319). Certiorari

was denied by the Supreme Court in *Columbia Broadcasting System, Inc.* We must conclude, therefore, that *INS* cannot be relied upon to make actionable the "mere copying" of matter within the purview of the patent and copyright laws which, pursuant to such laws, has become public domain.

Plaintiff correctly observes, however, that where free copying is accompanied by misappropriation "outside the scope of copying," the whole competitive scheme is actionable. An example of this is the decision of the Ninth Circuit in *Winston Research Corp.* v. *Minnesota Min. & Mfg. Co.* (9th Cir. 1965) 350 F.2d 134, which affirmed a district court injunction restraining defendants from marketing their copy of plaintiff's precision tape recorder and reproducer in competition with plaintiff for a period of two years. The two years represented the lead time required for a legitimate competitor to reverse engineer the product. Defendants had eliminated this delay by taking the plans and specifications in violation of their fiduciary duty as employees—conduct clearly outside the scope of "mere copying." Recognizing that the rule of *Sears* and *Compco* "precludes judicial recognition of a legally protectible interest in the secrecy of industrial information as such, as distinguished from an interest in the integrity of confidential employer-employee relationships [fn. omitted]" (*id.*, at p. 138), the Ninth Circuit held that the trial court had properly so limited the term of the injunction.

*Winston* is approved by the United States Supreme Court in *Kewanee Oil Co.* v. *Bicron Corp.* (1974) 416 U.S. 470 [40 L.Ed.2d 315, 94 S.Ct. 1879]. Again, the plaintiff's product had been duplicated by its employees who had taken with them "secret information on processes obtained while they were employees." (*Id.*, at p. 474 [40 L.Ed.2d at p. 321].) In holding that the federal patent and copyright laws did not preempt the giving of protection under state "trade secret law" in these circumstances, the court was careful to note that "[a] trade secret law, however, does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure *or by so-called reverse engineering*, that is by starting with a known product and working backwards to divine the process which aided in its development or manufacture." (*Id.*, at p. 476 [40 L.Ed.2d at p. 322].) (Italics added.)

The point of both *Winston* and *Kewanee* is that the copying was not "mere copying." It was copying carried on in an illegitimate fashion, i.e., in violation of defendant's fiduciary duties. Plaintiff's complaint in the case at bench, however, alleges no such facts. The complaint's description of the relationship between plaintiff and defendant as that of "supplier and distributor" pursuant to which defendant "acquired certain of Plaintiff's metal and other storage component products" no way suggests an agency or other fiduciary relationship. And there is nothing in the complaint to suggest that defendant acquired any information in confidence or indeed any information which was not disclosed and

disseminated by the sales to the public of plaintiff's products and the public distribution of its catalog. Thus, though the principle upon which plaintiff relies is sound, it has no application to plaintiff's complaint.

### No Failure to Identify Source and Origin Alleged

Plaintiff's contention that even if the allegations of the complaint are insufficient to allege an actionable misappropriation, they show that plaintiff "would be entitled to equitable relief from the trial court with respect to making [defendant] identify distinctly the source and origin of its products" is unsupportable. The only facts alleged bearing on the propriety of any such relief are the allegations of copying of plaintiff's product line and its catalog description thereof. Nothing in the complaint remotely suggests that defendant has failed to identify its duplicate product and catalog as its own. Both catalogs are attached as exhibits to the complaint. An examination of them demonstrates beyond any question that defendant's product line is identified as its product. The catalog cover describes the products as "Ladd-Fab Storage Systems," whereas plaintiff's catalog describes its product line as "Sammons Delta Series." Though, for the most part, the described dimensions, functions and capacities of defendant's products duplicate those of plaintiff's, a distinct system of catalog numbers is employed. The final page of defendant's catalog clearly states that the products described are "Manufactured by: LADD-FAB, 4323 N. Rowland Ave., El Monte, CA 91371." *Sears* and *Compco* both recognize the state's power to prevent the sale of copied items in such manner as to "deceive the public by palming off their copies as the original" (*Compco,* 376 U.S. at p. 238 [11 L.Ed.2d at p. 672]) and that in this connection state law may "require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source" (*Sears,* 376 U.S. at p. 232 [11 L.Ed.2d at p. 667). But the allegations of plaintiff's complaint herein do not suggest the omission of any such precaution and the facts that are alleged show appropriate steps were taken by defendant to identify the source and origin of its products. Consequently, we find no error in the trial court's ruling.

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.