CABLE ELECTRIC PRODUCTS, INC., Plaintiff,

v.

GENMARK, INC., aka Diablo Products Corp., Defendant.

No. C–83–0897–WWS.

United States District Court, N.D. California.

May 25, 1984.

Sutton & Magidoff, New York City, Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff.

Skjerven, Morrill, MacPherson & Drucker, Santa Clara and San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

### Background facts

Plaintiff Cable Electric Products, Inc. has since 1978 been manufacturing and marketing a light-sensitive night light device. It filed for a patent on this device in July 1978; the patent issued in August 1982. Defendant Diablo Products Corp. manufactures and sells a similar device. Plaintiff filed suit in this Court in February 1983; its amended complaint seeks relief for patent infringement, unfair competition, state-law trademark infringement, and false designation of origin in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a). On February 29, 1984, this Court granted defendant summary judgment on the patent infringement claim, finding plaintiff's patent invalid for obviousness. 582 F.Supp. 93, N.D.Cal. Feb. 29, 1984.

Defendant now moves for summary judgment on plaintiff's remaining claims. Essential to an evaluation of these claims is a brief discussion of plaintiff's prosecution of its now invalidated patent before the Patent & Trademark Office ("PTO"). Plaintiff filed its original patent application with the PTO in July 1978. That application met with little success, and despite numerous amendments was finally rejected in December 1981. After this final rejection, plaintiff amended the only remaining independent claim in its application. As plaintiff put it at the time, the amendment "seeks to more definitely and succinctly recite [the distinguishing and assertedly patentable] features of the present invention in a single claim ...." The amendment recites in detail the configuration of plaintiff's device.[1] It was on the basis of this amendment that the PTO issued plaintiff's patent in August 1982. The Court in its earlier order found the configuration recited in that amendment an innovation insufficient to the patentable.

### The federal claim

Plaintiff alleges that its night light's configuration "has come to designate origin;" thus it contends that defendant's use of a similar shape for its device constitutes "false designation of origin" in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a). It is apparent, however, that plaintiff is relying on aspects of its product that the Lanham Act does not protect. As the Federal Circuit recently noted:

> In order to prove a violation of section 43(a) of the Lanham Act, a plaintiff must establish the existence of three elements: (1) that the trade dress or product configuration of the two competing products is confusingly similar: (2) that the appropriated features of the trade dress product configuration are primarily nonfunctional; and (3) that the trade dress or product configuration has obtained secondary meaning. *See, e.g., Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210, 191 USPQ 79 (8th Cir.), *cert. denied,* 429 U.S. 861 [97 S.Ct. 164, 50 L.Ed.2d 139] (1976); *Ideal Toy Corp. v. Plawner Toy Manufacturing*

---

1. Specifically, the amendment added the following language:

    Said device being characterized by the absence of need for a power source other than that to which it is connected and wherein said housing does not cover the receptacle openings and surrounding receptacle portions of the unused receptacle of a duplex receptacle to which the device is connected, said light sensitive means including a photo conductive cell, said device including an electric light bulb with portions thereof mounted in said socket and a shade of predetermined shape and appearance, said shade comprising front and side wall portions, said front wall having generally planar surface extending between generally rectangular edges including longer vertical edges and relatively shorter horizontal extending edges, said side wall portions extending in a diverging manner generally symmetrically at a predetermined angle greater than 90 degrees away from said front wall portion toward a rearward plane of said housing, said shade being formed with at said front wall portion with a generally polygonal-shaped pattern extending over substantially the entire front wall portion, said shade further comprising bottom means capable of being swung inwardly to frictionally engage and disengage in a snap-on manner and be mounted to said housing in a position with respect to said housing illustrated in Fig. 1 of the drawing, said shade engagement and disengagement with said housing facilitating repeated replacement of said bulb.

*Corp.,* 685 F.2d 78, 216 USPQ 102 (3d Cir.1982).

*Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423 at 1444 (Fed.Cir.1984). Irrespective of any showing plaintiff might make on the first or third elements of its prima facie case, plaintiff cannot succeed in establishing the second. A product feature is "functional" if its primary purpose is to provide the product with some practical advantage in its intended use, *see, e.g., In re Deister Concentrator Co.,* 48 C.C.P.A. 952, 289 F.2d 496, 500 (1961). In contrast, a product feature constitutes nonfunctional "trade dress" if it is "mere arbitrary embellishment ... primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product ...." *Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir.1952). *See also In re Mogen David Wine Corp.,* 51 C.C.P.A. 1260, 328 F.2d 925 (1964) (although wine bottle's purpose was to hold wine, bottle's fanciful shape could serve to indicate source and could therefore be protected under Lanham Act).

■ In this case, there can be no doubt but that the elements of plaintiff's device that it seeks to protect are primarily functional. Plaintiff's own position before the PTO, as well as its position before this Court in opposing defendant's motion for summary judgment on the patent claim, was that its night light's configuration was utilitarian—indeed, patentably so, providing special advantages in compactness, efficient bulb change, and light diffusion. Plaintiff is bound by that position now. *See e.g., Best Lock Corp. v. Schlage Lock Co.,* 56 C.C.P.A. 1472, 413 F.2d 1195, 1199 (1969). There being no genuine dispute as to the functionality of plaintiff's night light configuration, or as to the evidentiary facts supporting such a finding, defendant is entitled as a matter of law to judgment on plaintiff's § 43(a) claim. Defendant's motion will therefore be granted on this claim.

*State-law claims*

■ *State trademark.* Plaintiff has registered its night light's configuration as a trademark, No. 70905, with the Secretary of State of California. Plaintiff alleges that defendant's product configuration infringes plaintiff's state-law trademark rights. However, established principles of federal preemption preclude protection of the configuration under state law.[2] In *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), the Supreme Court established that claimed state-law protection of intellectual property would be preempted by federal patent law where such state-law protection would interfere with the federal system's policy, embodied in the Constitution's Patent Clause, Art. I, § 8, cl. 8, of granting only temporally limited monopoly protection to only qualifying subject matter. This is a paradigm case for application of *Sears's* and *Compco's* principles.[3]

---

**2.** As an alternative ground for decision, the Court notes that California as well as federal trademark law does not protect functional product features. *See, e.g., KGB, Inc. v. Giannoulas,* 104 Cal.App.3d 844, 856, 164 Cal.Rptr. 571 (4th Dist.1980); *Hesse v. Grossman,* 152 Cal.App.2d 536, 542, 313 P.2d 625 (2d Dist.1957). As discussed in the preceding section, plaintiff's product configuration is functional and therefore unprotectible under either state or federal trademark law.

**3.** Subsequent authority has refined the reach of *Sears* and *Compco,* but not eliminated it. The Supreme Court has found that many forms of state-law protection of intellectual property permissibly supplement federal protections without compromising federal policy. *See, e.g., Aronson v. Quick Point Pencil Co.,* 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979) (enforcement under state law of a contract to pay royalties for use of an unpatentable invention not preempted by federal patent scheme); *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974) (state law of trade secrets, because of different and limited protection afforded, not preempted by federal patent law); *Goldstein v. California,* 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) (state-law protection for sound recordings not available under federal copyright law not inconsistent with federal scheme and thus not preempted).

Plaintiff in its opposition relies heavily on the opinions in *Golden Door, Inc. v. Odisho,* 646 F.2d 347, 351–52 (9th Cir.1980), *aff'g* 437 F.Supp. 956, 966 & n. 4 (N.D.Cal.1977), which hold that state trademark and unfair competition protection broader than that available under federal *trademark* law is not preempted by

Plaintiff specifically asserted in its patent application that it sought patent protection for its product's configuration; the PTO granted a patent on this configuration. This Court invalidated that patent, finding in the light of prior art that plaintiff's claimed invention was insufficient under federal patent law to merit a 17-year monopoly. Plaintiff now seeks to assert a temporally unlimited monopoly by characterizing as a state trademark the very configuration that this Court held unpatentable. As the Supreme Court noted:

> An unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so .... To allow a State ... to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public. The result would be that while federal law grants only 14 or 17 years' protection to genuine inventions ... States could allow perpetual protection to articles too lacking in novelty to merit any patent at all under federal constitutional standards. This would be too great an encroachment on the federal patent system to be tolerated.

*Sears, supra,* 376 U.S. at 231–32, 84 S.Ct. at 788–89; *see also Litton, supra,* at 1448–49.

Thus even if defendant has copied plaintiff's configuration in every detail, and even if plaintiff's configuration has acquired "secondary meaning" associating that configuration with plaintiff, defendant is entitled to judgment on the state-law trademark claim as a matter of law. *See Compco, supra,* 376 U.S. at 237–38, 84 S.Ct. at 781–82. Defendant's motion on this claim will therefore be granted.

■ *Unfair competition.* Plaintiff makes two distinct claims of unfair competition. First plaintiff claims that defendant has unlawfully copied plaintiff's source-identifying product configuration. Second, plaintiff claims that defendant markets its

product in packaging confusingly similar to plaintiff's. The first claim is easily disposed of for the reasons set out in the preceding section. Plaintiff's product configuration is plainly functional and thus not protected by California unfair competition law. If the configuration were protected by state law, that protection would be preempted by federal patent law under *Sears* and *Compco.*

Plaintiff's second claim is also meritless, but for different reasons. Plaintiff claims it has accrued goodwill and source identification in its "blister" packaging, which defendant has wrongfully copied. The packaging in question is a rectangular piece of printed cardboard roughly 5″ × 8″ in dimensions, with the night light mounted in clear plastic on the card. The card also contains a horizontally disposed slot centered near its top to allow it to be hung from a display rack.

*Sears* and *Compco* make clear that federal patent law does not preempt state remedies for unfair competition entirely:

> Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods. But because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying.

*Sears, supra,* 376 U.S. at 232–33, 84 S.Ct. at 789 (footnote omitted). "And of course a State cannot hold a copier accountable in damages for failure to label or otherwise identify his goods unless his failure is in violation of valid state statutory or decisional law requiring the copier to label or

the *Lanham Act.* As the discussion in the text demonstrates, plaintiff's claim here presents a

square conflict with federal *patent* law, and *Golden Door* is thus inapposite.

take other precautions to prevent confusion of customers as to the source of the goods." *Compco, supra,* 376 U.S. at 238–39, 84 S.Ct. at 782–83 (footnote omitted). Plaintiff's claim must thus be evaluated in light of what the preemptive force of federal law and the scope of state law define as protectible.

To begin with, the *configuration* of the blister packaging cannot as a matter of law form the basis for plaintiff's claim. The slotted rectangular cardboard backing allows for convenient display on racks widely used by merchants who sell the products; the clear plastic mounting allows the consumer to inspect the merchandise before purchase. These aspects of the packaging are therefore functional and not protectible under California law. *See* fn. 2, *supra.* Moreover, a visit to any hardware store makes it apparent that innumerable small household items, including night lights, are sold in substantially similar rack-mounted blister packaging. And a feature in general use in the relevant product market may not be one upon which a plaintiff relies for protection. *See Scudder Food Products, Inc. v. Ginsberg,* 21 Cal.2d 596, 599, 134 P.2d 255 (1943); *Don Alvarado Co. v. Porganan,* 203 Cal.App.2d 377, 384–86, 21 Cal.Rptr. 495 (3d Dist.1962); 1 J. McCarthy, *Trademarks and Unfair Competition* § 8.6 (1973). The most prominent feature of both parties' packages is, of course, the product itself, and the parties' products resemble one another. But for the reasons discussed earlier in this opinion, California law does not provide relief for such similarities, and if it did, federal law would preempt it.

The only protectible elements of plaintiff's packaging, then, are the labelling and appearance of the printed cardboard backing. Of course, the two packages must be compared with one another as wholes, but similarities resulting from unprotectible elements are to be disregarded. *Don Alvarado, supra,* 203 Cal.App.2d at 385, 21 Cal.Rptr. 495. There are certain similarities of content in some of the printed matter displayed on the parties' packaging. The fronts of both packages note that the device automatically turns on at dusk and off at dawn. They also recite the energy savings, security, and convenience advantages of the displayed product. The statements are accurately descriptive of the products' functions in plain, simple language. They are thus not entitled to any significant protection under California law. *See, e.g., North Carolina Dairy Fndn. v. Foremost-McKesson, Inc.,* 92 Cal.App.3d 98, 107, 154 Cal.Rptr. 794 (1st Dist.1979).

Any similarity in appearance ends there. The descriptive material just detailed is disposed on the cards in different places, and in different type faces, sizes, and colors. Plaintiff mounts its device on the card at the center of a set of three concentric colored rings, the innermost white, the second yellow, and the outermost orange, conveying a "sunburst" effect. Defendant's device, by contrast, is mounted superimposed on a photograph of a sleeping child's bedroom, a night light (presumably defendant's) in the photo faintly illuminating the scene. Most importantly, each package prominently displays its own trademark. Plaintiff's package is labeled with its federally registered mark "Sensor-Lite" in black type against the sunburst background; a distinctive orange dot appears in the center of the "o" in "Sensor." Above and to the left of plaintiff's mark appears, in smaller white letters set on a field of contrast blue against the orange background, plaintiff's federally registered mark "Snapit." On defendant's package, its registered mark "Good Nite Light" appears in large white letters on the brown background formed by the darkened wall of the child's room in the photograph. Above and to the left of this designation appears in smaller letters the legend "A Diablo Product." The trademarks on both packages appear in contrast-colored letters about three-quarters of an inch in height at the top center of the 5″ × 8″ card. Each designation is, with the exception of the night light itself, by far the most prominent feature on the package. None of plaintiff's marks, or any mark remotely similar to any of plaintiff's marks, appears anywhere on defendant's packaging.

Under these circumstances, summary judgment is appropriate. Although whether packaging is confusingly similar is normally an issue for the finder of fact, the issue may be disposed of as a matter of law when no reasonable person could find the protectible aspects of defendant's packaging confusingly similar to plaintiff's. *Scudder, supra,* 21 Cal.2d at 602, 134 P.2d 255; *Southern California Fish Co. v. White Star Canning Co.,* 45 Cal.App. 426, 187 P. 981 (2d Dist.1920). In light of *Sears* and *Compco,* the California courts have now limited unfair competition claims like the one at bar to claims of "passing off" for failure to adequately identify source. *Sammons & Sons v. Ladd-Fab, Inc.,* 138 Cal.App.3d 306, 187 Cal.Rptr. 874 (2d Dist.1982). There can be no genuine dispute here that defendant has carefully and prominently labeled its packaging with its own distinctive marks. Defendant's motion on this claim will therefore be granted.

### Disposition

Since this Court's ruling on the patent claim, discovery in this action has been stayed. Plaintiff has with its opposition filed a request for discovery on certain matters it asserts to be indispensable to its ability to respond to defendant's instant motion. The Court has discretion under Fed.R.Civ.P. 56(f) to deny defendant's motion without prejudice, or to delay deciding defendant's motion, pending plaintiff's necessary discovery. In this case, however, the discovery plaintiff requests is either immaterial to the issues defendant raises, or not justified in light of the undisputed evidentiary facts already before the Court.

Plaintiff seeks discovery on two general issues. Plaintiff's requests numbered 4–8 concern information surrounding defendant's design and manufacture of its night light; the requests seek to substantiate plaintiff's allegations that defendant copied plaintiff's product configuration. For the reasons stated previously, whether defendant copied plaintiff's device is irrelevant. No relief is available under state or federal law for such copying, even assuming it occurred.

Plaintiff's requests numbered 1–3 seek information concerning actual consumer confusion between the two products at issue that may currently be occurring in the marketplace. Actual consumer confusion is often good proof that defendant's product is misleadingly similar to plaintiff's. *See, e.g., Hair v. McGuire,* 188 Cal. App.2d 348, 353, 10 Cal.Rptr. 414 (4th Dist. 1961). However, in this case it is clear that neither plaintiff's product configuration, nor the configuration of its "blister" packaging, nor the generically descriptive text on its package is subject to protection under state or federal law. And an examination of plaintiff's packaging, viewed in the context of the packages as a whole, conclusively shows plaintiff's protectible interests not to be infringed. Any evidence of actual confusion that plaintiff might uncover would virtually certainly be the result of defendant's use of product and package features within the public domain. Given the care with which defendant has distinctively labeled its product, the probability is vanishingly small that plaintiff could uncover any evidence in the discovery requested tending to show that the appearance of defendant's package, with respect to plaintiff's protectible interests, is confusingly similar to plaintiff's.

Nor has plaintiff made any attempt to buttress its request for discovery by information which would be within its control if it existed. For example, plaintiff knows how many of defendant's night lights have mistakenly been returned to plaintiff, if any. Plaintiff has had ample opportunity in the six months since it filed its amended complaint to document such returns, and secure declarations from those who returned the items, or from others said to have been confused, outside the scope of adversary discovery and without imposing additional financial burdens on defendant. Plaintiff has proffered nothing. *Cf. Litton, supra,* at 1447 ("why affixing a name is not sufficient to avoid a likelihood of confusion should be shown by the plaintiff . . .").

In granting or denying a motion under Rule 56(f), the Court should be guided by

those considerations set out in defining the scope of permissible discovery in Rule 26(b)(1):

> [D]iscovery ... shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

*Cf. First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 294–99, 88 S.Ct. 1575, 1595–98, 20 L.Ed.2d 569 (1968). In light of the plainly distinct packages before the Court, plaintiff's failure to come forward with any facts tending to show that plaintiff's protectible interests are nevertheless somehow being infringed, or any other showing that the proposed discovery is likely to be productive of material facts, it would be unwarranted to put the parties to the substantial effort and expense that plaintiff's requested discovery would entail.

Therefore, plaintiff's discovery request will be denied. Defendant's motion is granted as to all remaining claims in this action. Judgment will be entered for defendant.

IT IS SO ORDERED.